UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VASYL MICHAEL HARIK, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 05-1390 (RMC) |
| ) | |
| v. ) | |
| ) | |
| NATIONAL AERONAUTICS AND SPACE ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO DISMISS
OR IN THE ALTERNATIVE TO TRANSFER**

Defendant, the National Aeronautics and Space Administration, respectfully moves to dismiss this case for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), and for improper venue, pursuant to Rule 12(b)(3). In the alternative, defendant moves to transfer this case to the Eastern District of Virginia. This case involves allegations of employment discrimination under Title VII. Plaintiff worked for a government contractor company, not for NASA. His work took place in Hampton, Virginia, for a company based in Beltsville, Maryland. NASA does not have any employment records of plaintiff. Furthermore, NASA did not control the terms of his employment or meet the other factors in Spirides v. Reinhardt, 613 F.2d 826 (D.C. Cir. 1979). Accordingly, dismissal of the case is appropriate. In the alternative, the Court should transfer the case, pursuant to 28 U.S.C. 1404. A proposed order is attached.

October 14, 2005                              Respectfully submitted,

_____

KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

_____

R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney


_____

ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204
alan.burch@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VASYL MICHAEL HARIK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 05-1390 (RMC) |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM MOTION TO DISMISS
OR IN THE ALTERNATIVE TO TRANSFER**

This case should be dismissed for lack of subject matter jurisdiction because the waiver of sovereign immunity in Title VII for civil actions alleging discrimination in federal government employment does not extend to employees of government contractors like Plaintiff; instead it reaches only those individuals who are directly employed by the federal government. Because this motion presents evidence challenging the jurisdictional basis of the case, the Court is not required to presume the truth of the factual allegations in the complaint, but is instead required to weigh the evidence in the record to make the factual findings necessary to resolve the jurisdictional issue. The facts here show that plaintiff worked for a government contractor, not for the National Aeronautics and Space Administration ("NASA").

These same facts also show that plaintiff performed that work in Virginia, that NASA has no employment records of plaintiff, and that venue for any Title VII action against NASA would be improper here in any event. Therefore, defendant seeks dismissal for improper venue, or in the alternative, transfer to the Eastern District of Virginia.

**Background**

**I.      General organization of NASA**

The National Aeronautics and Space Administration ("NASA" or "the Agency") is a civilian agency exercising control over aeronautical and space activities sponsored by the United States.  NASA's headquarters are located in Washington, DC, and there are ten field installations throughout the United States.  NASA employs approximately 18,500 civil servants and has an annual budget of about $16 billion.  See generally www.nasa.gov/about/highlights/index.html.

NASA Langley Research Center ("NASA Langley") is a NASA field installation located approximately 200 miles southeast of Washington, DC, in Hampton, Virginia.  NASA Langley conducts research for aerospace, atmospheric sciences, and technology commercialization, and the facility employs approximately 2,000 civil servants.  See id.

**II.      The Swales contract at NASA Langley**

Swales Aerospace ("Swales") is a privately-owned aerospace engineering firm founded in 1978.  Swales is headquartered in Beltsville, Maryland, with satellite offices in California, Texas, and Virginia.  Swales earns approximately $160 million in revenues annually and has approximately 925 employees.  See generally www.nasa.gov/centers/langley/home/index.html.

On November 1, 2000, Swales won contract NAS1-00135 to provide research, engineering, and technical support necessary to assist the Agency.  See Ex. 1, Swales statement of work for NAS1-00135.  Under this contract, Swales was to perform work for the Agency at NASA Langley from January 1, 2001, through December 31, 2005.  See id.  The Swales statement of work includes task order number 06RCD for "Material/Structural Mechanics Analysis and Testing."  See Ex. 2 (Swales task order number 06RCD).

2

III.    **Plaintiff's employment history with Swales**

The following facts are not in dispute.

On or about June 18, 2002, Vasyl Harik ("Plaintiff") was hired by Swales as a structural engineer. See Ex. 3, testimony before the Virginia Employment Commission ("VEC") at 7 (lines 4-10),  83 (lines 16-25) (June 18 and July 15, 2004).  Plaintiff was a full-time employee of Swales, earning roughly $37.00 per hour.  See Ex. 3 at 7 (lines 12-14), 84 (lines 1-3).  Upon commencing work for Swales, Plaintiff was given two assignments: to work on Swales' contract with NASA under task order number 06RCD, as well as performing work under Swales' contract with the University Space Research Association ("USRA").  See Ex. 3, at 56 (lines 21-24). Swales management intended that Plaintiff spend roughly half of his time on the NASA work and half of his time on the USRA work.  See id. (lines 24-25).

A year and a half into his employment with Swales, Plaintiff began using large amounts of sick leave, which drew the attention of the Swales Director of Human Resources.  In January 2004, Plaintiff used an average of 35 hours of sick leave per week.  See Ex. 4 (termination notice, dated April 5, 2004).  In February 2004, the Swales Director of Human Resources requested a meeting with Plaintiff to discuss his absences.  During this meeting, in addition to offering explanations for his absences, Plaintiff alleged that NASA Langley employee Thomas Gates had withheld software from him which hindered his ability to perform under the NASA task order.  See Ex. 3, at 106-10; Ex. 4.  It appears from the record in the various other proceedings that Plaintiff's hostility toward Gates pre-dates Plaintiff's employment with Swales and began when Plaintiff was employed by another contractor doing business with NASA Langley.  Plaintiff's interaction with Gates pre-Swales was never raised formally by Plaintiff and

3

is not addressed here.  Gates was not involved in Plaintiff's work under the Swales contract and had no involvement in the decision by Swales to terminate Plaintiff.  See, e.g., Exs. 3-A, 3-B, 3-C, 3-D, and 4.

In March 2004, on several occasions, Swales management requested that Plaintiff attend meetings to discuss his performance.  Swales management also requested that Plaintiff provide required monthly progress reports.  See Ex. 3 at 11 (lines 2-11, 19-26), 59 (lines 11-12), 60 (lines 10-11), 13 (lines 17-20).  Plaintiff refused to attend the requested meetings and responded in an insubordinate manner to his Swales supervisor.  See Ex. 3 at 11 (lines 15-18), 59 (lines 2-6), 12 (lines 14-19).  In a March 29, 2004, email to his Swales managers, Plaintiff "resigned" from his assigned duties under the NASA task order.  See Ex. 3-A (Exhibit 2 thereto, page 8).

On April 5, 2004, Swales notified Plaintiff that in accordance with Policy 8.2 of the Swales Policies and Benefits Manual, his employment with Swales was terminated effective immediately due to "gross misconduct."  See Ex. 3-B (letter from Swales to Plaintiff, at 2, dated Apr. 5, 2004); and Ex. 4.  The Swales Policies and Benefits Manual, Policy 8.2, states, "'For cause' terminations include . . . [g]ross misconduct such as insubordination.  Swales reserves the right to waive advance notice and termination benefits in a 'for cause' termination action."  Since Plaintiff's termination from Swales, he has filed a claim against Swales for unemployment compensation and has brought a civil action against Swales in the District of Maryland for unlawful discrimination.  See Ex. 3-C; Harik v. Wilson, No. 05-1182 (D. Md. May 2, 2005).

A.     **Plaintiff's claim against Swales for unemployment compensation**

On or about April 6, 2004, Plaintiff filed a claim for unemployment compensation with the VEC. See Ex. 3-C.  On May 7, 2004, the VEC issued its determination that Plaintiff was

4

disqualified for benefits because his termination by Swales resulted from his own misconduct. <u>See</u> Ex. 3-D.  On appeal, the VEC Appeals Examiner affirmed the VEC decision. <u>See</u> Ex. 4 (plaintiff's appeal); Ex. 5 (decision of VEC Appeals Examiner, July 26, 2004).

>    **B.     Plaintiff's discrimination complaint against Swales**

On October 14, 2004, six months after his termination by Swales, Plaintiff filed a discrimination complaint against Swales with the Virginia Council on Human Rights and the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging unlawful discrimination based on retaliation and national origin.  <u>See</u> Ex. 6 (charge of discrimination 121-2005-00090, Oct. 14, 2004).  On January 31, 2005, the EEOC issued a Dismissal and Notice of Rights, sustaining the termination.  <u>See</u> Ex. 7 (Swales' response to charge 121-2005-00090, Nov. 18, 2004); Ex. 8 (Dismissal and Notice of Rights, Jan. 31, 2005).

On May 2, 2005, Plaintiff filed a civil action in the U.S. District Court for the District of Maryland against Swales Aerospace and two of its officers, alleging that based on his national origin and in retaliation for prior protected activity, Swales unlawfully terminated his employment. <u>See</u> <u>Harik v. Wilson</u>, No. 05-1182 (D. Md. May 2, 2005).  Additionally, Plaintiff alleged that Swales management had condoned software being withheld from him, that he was denied the opportunity to participate in conferences, and that offensive comments had been made about his national origin. <u>See</u> <u>id.</u>  Plaintiff also alleged that Swales had pressured him to stop his EEO complaints. <u>See</u> <u>id.</u>  That case is now in discovery.

## IV.     Procedural History

In February 2004, Plaintiff first contacted the NASA Langley Office of Equal Opportunity Programs and stated that he wished to file a complaint of discrimination against the

Agency.  February 2004 is the date Plaintiff provides in his complaint and is assumed accurate

for purposes of this document; it is not clear from the record when exactly Plaintiff first

contacted the NASA Langley Office of Equal Opportunity Programs.   Pursuant to NASA

guidance, the Agency conducted a limited jurisdictional inquiry to gather information on whether

Plaintiff was an employee of the Agency within the meaning of Title VII.  See Ex. 10 at 6

("NASA Office of Equal Opportunity Programs Discrimination Complaints Division

Implementing Instructions for EEOC Enforcement Guidance Notice 915.002" (Aug. 1999)).  The

1999 NASA guidance implements the December 1997 EEOC Enforcement Guidance No.

915.002: "Application of EEO Laws to Contingent Workers Placed by Temporary Employment

Agencies and Other Staffing Firms," available at www.eeoc.gov/policy/docs/conting.html.  On

May 14, 2004, in order to determine whether NASA had jurisdiction over Plaintiff's allegations,

the NASA Langley Office of Equal Opportunity Programs evaluated the facts of Plaintiff's case

against the "contingent worker" factors provided in the NASA and EEOC guidance.  See Ex. 12,

(Contingent worker determination, May 14, 2004).  NASA determined that Plaintiff was not an

employee of the Agency for purposes of Federal discrimination statutes.  See id.

       Per Agency requirements, Plaintiff was informed of his right to file a formal complaint of

discrimination with the Agency.  See Ex. 13 (notice of right to file, June 8, 2004).  On June 21,

2004, Plaintiff filed a formal complaint of discrimination against the Agency, alleging that

because of his national origin and in retaliation for his prior claims of discrimination, he was

subjected to a hostile work environment which hindered his performance and which culminated

in his termination from employment with Swales.  See Ex. 14 (Administrative complaint, June

21, 2004).  The Agency evaluated Plaintiff's formal complaint solely on the jurisdictional issue

6

of whether Plaintiff was an agency "employee" under Title VII, and on March 9, 2005, issued a

notice to Plaintiff, upholding the earlier determination that no employment relationship existed

between Plaintiff and NASA.  See Ex. 15 (Agency dismissal letter, March 9, 2005).

On July 12, 2005, Plaintiff filed the instant action in U.S. District Court for the District of

Columbia.

### Standard of Review

A motion under Rule 12(b)(1) "calls into question the court's power to hear the plaintiff's

claim . . . and therefore imposes upon courts an affirmative obligation to ensure that they are

acting within the scope of their jurisdictional power."  5A Wright & Miller, *Federal Practice &

Procedure* 2d § 1350; see also District of Columbia Retirement Bd. v. United States, 657 F.

Supp. 428, 431 (D.D.C. 1987).

Under Rule 12(b)(1), when a court reviews a complaint under factual attack for lack of

jurisdiction, no presumption of truthfulness applies to the factual allegations.  Ohio Nat'l Life

Ins. Co. v. United States, 922 F.2d 320 (6th Cir.1990).  When the defendant challenges the

Court's jurisdiction, the burden of establishing jurisdiction rests on the plaintiff.  Zhengxing v.

Nathanson, 215 F. Supp. 2d 114, 116 (D.D.C. 2002) (citations omitted); see also Meir v. Greater

Cleveland Regional Transit Auth., 895 F.2d 266 (6th Cir.1990).

While the court must draw all reasonable inferences in the plaintiffs' favor, "[t]he court is

not required, however, to accept inferences unsupported by the facts alleged or legal conclusions

that are cast as factual allegations."  Rann v. Chao, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), aff'd,

346 F.3d 192 (D.C. Cir. 2004), cert. denied, 125 S. Ct. 35 (2004).  In addition, in deciding a

motion under Rule 12(b)(1), the Court may go beyond the complaint's allegations.  Id. (citing

7

Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992)). "When facts that form the basis of subject-matter jurisdiction are in controversy, a district court has authority to weigh the conflicting evidence to determine if subject-matter jurisdiction exists." Capone-Ferdinand v. Central Intelligence Agency, 131 F. Supp. 2d 232, 235 (D.D.C. 2001).

**Argument**

**I.    Plaintiff Was Not an Employee of NASA within Meaning of Title VII.**

To have jurisdiction over the subject matter of this case, the Court must first find that the government's waiver of sovereign immunity for Title VII claims reaches plaintiff. Thus, under Title VII, the Court must determine whether plaintiff is an "employee" of the defendant federal agency, here NASA. See 42 U.S.C. § 2000e et seq. Title VII defines an "employee" as "an individual employed by an employer," 42 U.S.C. § 2000e(f), but this statutory definition by itself does nothing helpful to define the applicable standard. The Supreme Court, however, held that "Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-23 (1992). The D.C. Circuit has grappled with this common-law employment doctrine in the context of federal agencies in several cases and the controlling cases remain Spirides v. Reinhardt, 613 F.2d 826, 831 (D.C. Cir. 1979), and Redd v. Summers, 232 F.3d 933 (D.C. Cir. 2000).

In Spirides, this Circuit found that "the extent of the employer's right to control the means and manner of the worker's performance is the most important factor[.]" 613 F.2d at 831. To apply this test, the court listed eleven factors that should be considered:

1.    the kind of occupation, with reference to whether the work is usually done under

8

the direction of a supervisor, or is done by a specialist without supervision;

2.  the skill required by the particular occupation;

3.  whether the "employer" or the individual in question furnishes the equipment used and the place of work;

4.  the length of time during which the individual has worked;

5.  the method of payment, whether by time or by the job;

6.  the manner in which the work relationship is terminated <u>i.e.</u> by one or both parties, with or without notice and explanation;

7.  whether annual leave is afforded;

8.  whether the work is an integral part of the business of the "employer";

9.  whether the worker accumulates retirement benefits;

10. whether the "employer" pays social security taxes; and

11. the intention of the parties.

<u>Spirides</u>, 613 F.2d at 832.  To facilitate this analysis, the D.C. Circuit in <u>Redd</u> grouped these factors into four categories:

1.  the intent of the parties (<u>Spirides</u> factor eleven),

2.  whether using government contractors is justifiable as a prudent business decision (<u>Spirides</u> factors one, two, and eight),

3.  the client's control over the work (Spirides factors three and six), and

4.  whether the relationship has attributes commonly found in arrangements with independent contractors or employees (Spirides factors four, five, seven, nine, and ten).

<u>Redd</u>, 232 F. 3d at 938.  <u>See also</u> <u>Mason v. African Dev. Found.</u>, 355 F. Supp. 2d 85, 90 (D.D.C. 2004).  In using these four categorized factors, the D.C. Circuit confirmed in <u>Redd</u> that the primary consideration was control over the means and manner of the worker's performance.  <u>See</u> 232 F.3d at 939.

**A.    The Agency Did Not Have the Right to Control the Means and Manner of Plaintiff's Performance.**

An employer controls the means and manner of an employee's performance if that employer can control and direct not only the result to be achieved, but also the details by which that result is achieved. <u>Redd,</u> 232 F.3d at 938.

9

In <u>Bryant v. Orkand Corp.</u>, No. 03-2305 (RJL), 2005 U.S. Dist. LEXIS 4894, 2005 WL 670295 (D.D.C. Mar. 21, 2005), several plaintiffs who had been employed by computer support service firms which had contracts to provide services to the U.S. Department of State alleged that they were employees of the State Department and that the State Department had unlawfully discriminated against them in violation of Title VII.  In granting the State Department's motion to dismiss, the court found that even though the State Department retained control over the companies with whom it contracted, it did not control those companies' employees.  <u>See</u> 2005 WL 670295 at *4.

Similarly, in this case, Plaintiff was assigned by Swales to perform work for the Agency under a task order pursuant to Swales' contract with NASA. <u>See</u> Exs. 1 & 2.  Plaintiff was required to provide monthly progress reports to his Swales managers, and Swales managers were responsible for evaluating Plaintiff's performance.  <u>See</u> Ex. 3 at 66 (lines 15-19).  Plaintiff admits that he had daily interactions with his Swales supervisor during which Plaintiff explained what he was working on and the location where he was working.  <u>See</u> 3 at 120 (lines 23-26) and 121 (lines 7-11).

To the extent that Agency employees were involved in directing Plaintiff's work, courts have reasoned that in a "typical" client-contractor relationship, it is normal for the client to review the work performed by the contractor to determine whether it meets its expectations. <u>Brug v. National Coalition for the Homeless</u>, 45 F. Supp. 2d 33, 38 (D.D.C. 1999); <u>King v. Dalton</u>, 895 F. Supp. 831, 838-839 n.10 (E.D. Va. 1995).  Further, a plaintiff's allegation that he was supervised by a federal employee is not determinative, in that presumably, any large government contract will be supervised to some extent by the client government agency, yet the word

10

"employee" as used in Title VII "clearly does not encompass every government contractor." <u>Id.</u>

Perhaps the clearest indication that Swales, not NASA, was the entity with control over Plaintiff is that at the outset of Plaintiff's employment, he was directed by Swales to spend half of his time working for NASA and half of his time working for USRA, completely unrelated to NASA. <u>See</u> Ex. 3 at 56 (lines 24-25). It follows that a full fifty percent of Plaintiff's work was beyond the Agency's control. Moreover, by the time Plaintiff was terminated by Swales in April 2004, he was, by his own admission, working solely on the USRA tasks. <u>See</u> Ex. 3 at 88, 104-05.

**B.      The Intent of the Parties Was Not to Enter into an Employment Relationship.**

In order to determine intent, courts generally look to the language of the contract, but note that the "although contract language may be indicative to some degree of the intention of the parties, it is not necessarily controlling." <u>Spirides</u>, 613 F.2d at 832.

Here, the contract between the parties is of little assistance in determining their intent as to Plaintiff's employment; Plaintiff's employment by Swales is not specifically addressed in the NASA contract, nor is it addressed in the text of the task order. On the other hand, Plaintiff admits that upon his employment with Swales, he was given a copy of the Swales Policies and Benefits Manual, an indication to Plaintiff that Swales, not NASA, was his employer. <u>See</u> Ex. 3 at 86, (line 4); and Ex. 2 at 6. Another indication that Plaintiff understood that Swales, not NASA, was his employer are his repeated references to John Mitchell and Vaughn Behun, both Swales employees, as his "immediate supervisors." <u>See</u> Ex. 3 at 37 (line 26), 38 (line 1) 41 (line 8), 92 (lines 16-17), 102 (line 1), 109 (lines 16-23).

**C.      It Was a Justifiable and Prudent Business Decision on the Part of the Agency**

11

**to Contract out the Work Performed by Plaintiff.**

In making a determination as to whether contracting out the work in question is a justifiable and prudent business decision, a court must consider whether the federal agency was required to supervise the individual's work, whether the work required special skills, and whether the work is an integral part of the federal agency's business. Mason, 355 F. Supp. 2d at 93-94. Here, an evaluation of these three factors indicates that it was a prudent business decision, not an attempt to circumvent rights afforded to regular Agency employees, to contract out the work performed by Plaintiff.

As to whether the Agency was required to supervise Plaintiff's work, it is undisputed that Plaintiff's performance evaluations were the responsibility of Swales, not NASA. See Ex. 3 at 66 (lines 15-19). Plaintiff admits that he interacted with his Swales managers on a daily basis. See id. at 120 (lines 23-26), 121 (lines 7-11).

An individual's possession of specialized knowledge or skills before commencing the position in question also weighs in favor of an independent contractor relationship. Zhengxing, 215 F. Supp. 2d at 118. Here, by Plaintiff's own admission, he was a trained structural engineer with an advanced degree in mechanical engineering and composites awarded in 1997. See Ex. 3 at 7. There is no question that Plaintiff possessed his specialized knowledge and skills prior to beginning his work for the Agency under the Swales contract.

As to whether the structural engineering work performed by Plaintiff was an integral part of the Agency's business, the statement of work under contract NAS1-00135 specifies that Swales is to provide "research, engineering, and technical support necessary to assist the NASA Langley Research Center and other NASA Centers in fulfilling [the Agency's] mission." See Ex.

1 at 1 of 11.  This sort of engineering support is typical of the work that NASA contracts out to private firms and, when viewed against the whole of the Agency's goals and responsibilities, is not integral to NASA's overall mission.  Compare Ex. 1 with Ex. 2.

> **D.**  **The Agency's Exercise of Control over Plaintiff Was Not Excessive in Comparison to a Reasonable Client-contractor Relationship in the Same Circumstances.**

In order to evaluate the agency's control over the individual, the court must address (1) whether the agency furnished the equipment used along with the office where the work was performed; and (2) the manner in which the relationship was terminated. Mason, 355 F. Supp. 2d at 95 (citing Redd, 232 F. 3d at 939).

As to equipment and office space, in this case, the Agency provided a computer and an office for Plaintiff's use in carrying out his assignments under the task order.  It is clear, though, that prior to Plaintiff's termination, Swales moved Plaintiff to another office within the Swales office complex, demonstrating the level of control it retained over where Plaintiff worked.  See Ex. 3 at 57 (lines 2-3), at 67 (lines 1-3).

As to manner of termination, courts have held that an individual's termination without notice or the opportunity for a response is an indication that the individual was not an employee of the agency.  Zhengxing, 215 F. Supp. 2d at 118-119.  Unlike civil servants, the employment relationship between companies and their employees may could be terminated at will. Id.  Here, Plaintiff was given a letter by Swales which effected his immediate termination from employment; he was afforded no notice and no chance to respond.  See Ex. 4.  Were Plaintiff a federal employee, such a termination, even for gross insubordination, would have been in violation of the Agency's due process requirements under Part 752 of Title V of the Code of

13

Federal Regulations.

      **E.**    **The relationship between Plaintiff and the Agency shares attributes commonly found in arrangements with independent contractors, rather than employees.**

      Under this analysis, the following factors are considered:  the duration of the engagement, the method of payment, whether annual leave is afforded, whether the worker accumulates retirement benefits, and whether the agency pays social security taxes for the individual. Mason, 355 F. Supp. 2d at 96 (citing Redd, 232 F. 3d at 940).  In this case, it is not disputed that Swales paid Plaintiff's salary, paid taxes, and was responsible for whatever retirement benefits Plaintiff may have accrued.  See Ex. 3 at 16 (lines 7-11).  The Agency had no input into and did not control Plaintiff's use of vacation or sick leave.  Plaintiff testified under oath, "All of my sick leaves were approved on a weekly basis by my immediate supervisors."  See Ex. 3 at 100 (lines 5-6).  In fact, Plaintiff's leave abuse was a factor in Swales' decision to terminate him from employment.  See Ex. 4.

**II.**    **Venue is Improper in the District of Columbia.**

      Title VII has a special venue provision which specifies four possibilities for venue:

> Such an action may be brought in any judicial district in the State **[1]** in which the unlawful employment practice is alleged to have been committed, **[2]** in the judicial district in which the employment records relevant to such action are maintained and administered, or **[3]** in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but **[4]** if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3) (numbering added).  Thus, the statute defines three primary possible venues for a Title VII case.  The fourth basis, typically the agency headquarters office, is used for venue only in situations where the agency "may not be found within the judicial district that is

14

the locus of the alleged discrimination." <u>Darby v. U.S. Dept. of Energy</u>, 231 F. Supp. 2d 274, 278

(D.D.C. 2002). Courts have specifically held that the actions and omissions of an agency's

headquarters do not automatically impute venue wherever that principal office is located. <u>See</u>

<u>Robinson v. Potter</u>, No. 04-890 (RMU), 2005 WL 1151429, 2005 U.S. Dist. LEXIS 9491

(D.D.C. May 2, 2005).

It bears noting that the special venue provision in Title VII controls instead of the general

venue provisions under 28 U.S.C. § 1391, which establish default rules for venue that apply to

federal lawsuits where the underlying statutes do not specify their own venue rules. <u>See</u>

§ 1391(a), (b), and (e) (each applying "except as otherwise provided by law."). Because Title VII

"otherwise provide[s]" for venue, plaintiff is mistaken in assuming that venue for her Title VII

claims is controlled by the general venue provision of subsection 1391(e) (venue for civil actions

against federal employees sued in their official capacity). <u>See</u> Compl. at 2, ¶ 4. Therefore, venue

for Title VII claims is governed by section 2000e-5(f)(3). <u>See, e.g.,</u> <u>In re: O'Leska</u>, No. 00-5339,

2000 WL 1946653 (D.C. Cir. Dec. 7, 2000) (per curiam, unpublished); <u>Stebbins v. State Farm</u>

<u>Mutual Auto Ins. Co.</u>, 413 F.2d 1100, 1102-03 (D.C. Cir. 1969), <u>cert. denied</u>, 396 U.S. 895

(1969); <u>Saran v. Harvey</u>, 04-1847 (JDB), 2005 U.S. Dist. LEXIS 8908 at *5 (D.D.C. May 9,

2005); <u>Archuleta v. Sullivan</u>, 725 F. Supp. 602, 604 (D.D.C. 1989). <u>See also</u> <u>In re: Horseshoe</u>

<u>Entertainment</u>, 337 F.3d 429, 432-33 (5th Cir. 2003); <u>Pierce v. Shorty Small's of Branson, Inc.</u>,

137 F.3d 1190, 1191 (10th Cir. 1998).

Here, venue is not proper in the District of Columbia, and this action should be

dismissed, or, in the alternative, transferred to the Eastern District of Virginia. First, the

allegedly unlawful employment practices occurred in Hampton, Virginia. <u>See</u> Compl. ¶¶ .

15

Second, it is not clear where the relevant employment records are kept, because NASA does not have any such records, but it appears likely that the contractor may have such records either in Hampton, Virginia, or at its offices in Beltsville, Maryland.  Third, the alleged discrimination did not seem to affect the location of plaintiff's employment, so this again points to his place of work in Hampton, Virginia.

Finally, the defendant NASA may be found in the Eastern District of Virginia, in Hampton, at NASA Langley (and also in Maryland), so the fourth basis for venue under Title VII's special venue provision also indicates that venue is improper in D.C.

It is undisputed that for the duration of Plaintiff's employment with Swales, he worked in Hampton, Virginia.  As to employment records, since Plaintiff was not an employee of the Agency, the Agency possesses no official records relating to Plaintiff's employment.  Swales, Plaintiff's employer, maintains and administers its employment records at its headquarters in Beltsville, Maryland.  [Per Swales Director of Human Resources.  NASA's Goddard Space Flight Center is located in Greenbelt, Maryland, but there is no assertion that Plaintiff ever worked at that facility.  Venue is more appropriately in the Eastern District of Virginia, where Plaintiff worked and where the alleged unlawful discriminatory acts occurred.]  Plaintiff alleges that the discriminatory acts took place at NASA Langley in Hampton, Virginia, and that arguably, he would have continued to work there but for the Agency's unlawful discrimination.

**Conclusion**

For the foregoing reasons, this Court lacks subject matter jurisdiction and should dismiss the case.  In the alternative, the Court could transfer the case to the Eastern District of Virginia.

October 14, 2005                              Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney


_____
R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney


_____
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204
alan.burch@usdoj.gov

17

## CERTIFICATE OF SERVICE

I certify that the foregoing Defendant's First Motion to Enlarge Time to File Answer or Otherwise Respond to Complaint was served upon *pro se* plaintiff by depositing a copy of it in the U.S. Mail, first class postage prepaid, addressed to:

VASYL MICHAEL HARIK
P.O. Box 5606
Newark, DE 19714-5606

on this 14th day of October, 2005.


_____
ALAN BURCH
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204
alan.burch@usdoj.gov