08/31/2005 15:31 FAX 4107528861          SHAWE & ROSENTHAL                      ☑002



# DECISION OF APPEALS EXAMINER

Date Referred
or Appealed  : 05/12/04

Date Deputy's
Determination: 05/07/04

Local Office  : Williamsburg

Claimant's SSN : 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

Date of Hearing: 07/15/2004

Decision No.   : UI-0409124

Decision Mailed: 07/26/2004

CLAIMANT:
VASYL M HARIK
300-C RICHARDSON RUN
WILLIAMSBURG     VA 23188

SWALES & ASSOCIATION INC
5050 POWDER MILL RD.
BELTSVILLE        MD 20705-1913

LIABLE EMPLOYER:
SWALES & ASSOCIATION INC
5050 POWDER MILL RD.
BELTSVILLE        MD 20705-1913

IN THE MATTER OF:    VASYL M HARIK
                         VS
                     SWALES & ASSOCIATION INC

NOTICE: THIS DECISION BECOMES FINAL 30 DAYS AFTER MAILING UNLESS AN APPEAL IS FILED. THE APPEAL MUST BE IN WRITING AND SHOULD STATE THE REASON FOR THE APPEAL. THE APPEAL SHALL BE FILED (1) IN PERSON AT THE LOCAL OFFICE WHERE THE CLAIM WAS FILED, OR AT ANY OTHER V.E.C. OFFICE, (2) BY MAIL TO THE V.E.C., COMMISSION APPEALS - ROOM 125, P.O. BOX 1358, RICHMOND, VA 23218-1358, OR (3) BY FACSIMILE TRANSMISSION TO COMMISSION APPEALS AT (804) 788-9034, NOT LATER THAN MIDNIGHT OF AUGUST 25, 2004.

APPEARANCES: (First Hearing - Telephonic) Claimant; Employer Representative

(Second Hearing - Telephonic) Claimant; Employer Representative; Witness for Employer

STATUTORY PROVISION(S) AND POINT(S) AT ISSUE: Code of Virginia, Section 60.2-618(2) - Was the claimant discharged for misconduct connected with work?

FINDINGS OF FACT: This case is before the Appeals Examiner pursuant to a timely appeal filed by the claimant from a determination of the Deputy finding the claimant disqualified to receive benefits, effective April 4, 2004. The Deputy's determination was based on a finding that the claimant was discharged for misconduct connected with work.

The claimant's last 30-day employer, Swales & Association, Inc., in Hampton, Virginia, hired him on June 18, 2002, as a structural engineer, earning $37.00 per hour.

The employer's policy stated that employees could be discharged for gross misconduct, including, but not limited to, insubordination. The claimant was

4107528861        => NASA LARC LEGAL OFF , TEL=757 864 8298        08/31'05 15:35

aware of the policy t'   was published in his Employee F  dbook issued at time of hire.

The claimant's job duties included working on two different projects requiring the use of software. He was required to provide monthly progress reports of his activities, that were given to the employer's customers. He also worked for individuals that worked for the federal government, and not the employer. One of the workers supplied the claimant's software needs for his job duties.

The claimant felt that the worker was not adequately supplying him with the software that he needed and he complained of this in his progress reports. He began listing his complaints in October 2003, and on February 6, 2004, he made a formal complaint through the employer's Human Resources department, and filed a complaint with the worker's employer. During a meeting with the employer, the employer supported him in his complaint against the coworker. The employer subsequently moved him to a new location as to decrease the interactions between he and the coworker.

The claimant missed extensive time from work, due to a condition that he believes resulted from exposure while working, the employer told him in February 2004, that he needed to apply for disability, as he had exhausted all of his available medical leave.

On February 25, 2004, the claimant's immediate manager asked him for a list of his software needs. He told him he only needed one type of software, and explained to the manager which type. The manager also met with the coworker's supervisor to determine the validity of the claimant's complaints that his software needs were not being adequately addressed previously. The manager then met with the claimant on March 10, 2004, to discuss the delay in software. They also discussed one of the tasks the claimant was assigned to work on.

On March 19, 2004, the claimant sent an e-mail to his manager, criticizing the way in which the manager had handled the situation discussed at their earlier meeting. He also requested to begin telecommuting to work. Approximately one and one-half hour later, the manager replied to his e-mail and asked to meet with him again the following Monday morning, and to bring a written report of his work activities following their March 10, 2004 meeting. The claimant, however, did not check his e-mail messages until the following Wednesday, March 24, 2004, and therefore did not contact the manager or attend the meeting. When he did read the e-mail, he still did not contact him, as he did not think the problems he had complained of would have been addressed anyway. Later that morning, the manager sent him another e-mail requesting to meet with him on March 29, 2004, and asked that he bring the report originally requested.

The claimant did not respond to the manager's second request for a meeting and did not attend as requested. Instead, he sent a copy of his monthly progress report for one of his tasks, and told the manager that he would answer any questions via e-mail. He also told the manager in this e-mail of his intent to resign from this particular task. The manager inquired as to why the claimant did not meet with him as requested, and asked if he was refusing to do so. He further expressed to the claimant that he wanted a progress report on all of the claimant's activities regarding both tasks, and would be expecting the completed report by March 31, 2004.

The claimant responded two days later in an e-mail message, stating to the effect that the manager had been "bombarding him with muscle-flexing e-mails

that were bad examp[les] of micro management," and furt[her] that, "If he could not help to resolve his p[rob]lems, not to disrupt him." In ad[diti]on, the claimant inserted comments throughout the e-mail that he was not refusing to meet with the manager, but that he would only meet with him if, "the purpose of the meeting was defined." He further stated in the e-mail that, "If one can not be a part of a constructive solution, he should at least avoid being or creating a problem." The claimant also sent a copy of the report as requested.

As a result of the claimant's tone when addressing his manager via e-mail, and his refusal to meet with him as requested, the employer later discharged him.

OPINION: Section 60.2-618(2) of the Code of Virginia provides a disqualification if it is found a claimant was discharged for misconduct connected with work.

In the case of Branch v. Virginia Employment Commission, 219 Va. 609, 249 S.E.2d 180 (1978), the Supreme Court of Virginia defined misconduct as follows:

> In our view, an employee is guilty of "misconduct connected with his work" when he deliberately violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests and the duties and obligations he owes his employer. ...Absent circumstances in mitigation of such conduct, the employee is "disqualified for benefits," and the burden of proving mitigating circumstances rests upon the employee.

The disqualification for misconduct is a serious matter which warrants careful consideration. The burden of proof is on the employer to prove by a preponderance of the evidence that the claimant was discharged for reasons which would constitute misconduct connected with work. Dimes v. Merchants Delivery Moving and Storage, Inc., Commission Decision 24524-C (May 10, 1985); Brady v. Human Resource Institute of Norfolk, Inc., 231 Va. 28, 340 S.E.2d 797 (1986).

The Commission has consistently held that an employee's deliberate failure to follow the reasonable instructions or directions of a supervisor, or to show reasonable respect for one in a position of authority constitutes misconduct connected with work. Seay v. One-Hour Valet, Commission Decision 3270-C (August 13, 1958); Vines v. Committee of Judges System, Commission Decision 9661-C (September 7, 1977); Anderson v. Glass Marine, Inc., Commission Decision 13211-C (April 8, 1980). In the case of Guynn v. Kahn & Feldman, Inc., Commission Decision 4105-C (October 24, 1963), the Commission articulated the rationale for holding insubordination and flagrant disrespect for authority to be misconduct connected with work. In that case, the Commission stated:

> Insubordination, since it breeds discontent among employees and jeopardizes the harmony of labor-management relationships thereby impeding industrial progress, has been held to constitute

misconduct. It has long and universally been held to be misconduct by this Commission as well as by administrative and judicial decisions of other jurisdictions.

In <u>Ware v. Adesso Precision Machine Co.</u>, Commission Decision 31397-C (July 25, 1989), the Commission noted that insubordination has consistently been held to constitute work-connected misconduct and went on to state:

> Insubordination can manifest itself in one of two ways. First, an employee can deliberately refuse to follow the reasonable, legitimate instructions of a supervisor. In so doing, he demonstrates a deliberate defiance of proper authority. Second, an employee could participate in conduct which shows a flagrant disrespect for a supervisor's position and authority.

The Commission went on to disqualify the claimant from the receipt of unemployment benefits for misconduct based upon evidence that he directed profanity at the vice president in a loud voice and called him a liar in the presence of other employees.

In the present case, though the employer asked to meet with the claimant on three different occasions, he told the manager that he would only respond to questions via e-mail. He did not check his e-mail until after the manager's first request for a meeting time had passed, and still did not follow up with the manager to explain or to acknowledge his late receipt, because he did not think the manager intended to address his situation. He also criticized the manager, giving him stipulations under which he was only willing to meet. Furthermore, the claimant testified that he did not respond to the manager's final request for two days because he was working on other tasks.

The employer's argument that the claimant was insubordinate by not producing complete progress reports as was requested of him, is not persuasive, since it was not explained to him that he was expected to turn in reports on anything other than what he usually submitted every month.

Nevertheless, the tone of the claimant's e-mails to his manager, as well as his refusal to meet with him, were disrespectful of the manager's position of authority, and a blatant disregard of the manager's requests. Therefore, the Appeals Examiner holds that the employer has established misconduct by a preponderance of the evidence on the part of the claimant.

Once a finding of misconduct has been established, the burden then shifts to the claimant to show circumstances mitigating that conduct. The claimant admitted during the hearing that a timely response to e-mails is critical, but that since his manager did not comment on this, his response time was condoned. The Appeals Examiner finds this argument unpersuasive in light of the employer's response that he repeatedly requested these meetings in order to address personnel issues in person, rather than inappropriately discussing them via e-mail. The claimant should have known this to be the case.

The claimant also stated his reason for not meeting with the manager was because he did not feel it would be work-related. This is also non-persuasive as the manager's e-mails clearly stated it was his intent to discuss the

claimant's work acti⎽⎽es. The claimant further conten⎽ he would not meet with him because he ⎽t the manager would treat him ⎽ ⎽airly. The Appeals Examiner is of the opinion that had the claimant felt this was the case, he could have requested that someone from the Human Resources department be in attendance at the meetings as well.

In addition to the aforementioned, the claimant also lodged the argument that the only reason he was discharged, was to stop his complaint against the coworker concerning software distributions not being made in a timely manner, thus affecting project schedules. However, the claimant had to acknowledge that the manager had in fact, supported his efforts to bring this to light. Based upon the foregoing, the claimant has failed to establish mitigation.

DECISION: The determination of the Deputy is hereby affirmed.

The claimant is disqualified for benefits, effective April 4, 2004, because he was discharged for misconduct connected with work. This disqualification shall remain in effect until the claimant has performed work for an employer for at least 30 days, or for 240 hours (if applicable) and subsequently becomes totally or partially separated from such employment.

L. J. Carter
Appeals Examiner

LJC/dl