National Aeronautics and
Space Administration

**Langley Research Center**
100 NASA Road
Hampton, VA  23681-2199



May 14, 2004

Reply to Attn of:   478

TO:        EC/Director, Discrimination Complaints Division

FROM:      478/Head, Office of Equal Opportunity Programs

SUBJECT:   Contingent Worker Determination re:  Dr. Vasyl M. Harik

Dr. Vasyl M. Harik is alleging discrimination based on national origin (Russian) and harassment (hostile work environment).  He believes his removal from employment by another contractor was due in part to the influence of Dr. Thomas Gates, a NASA employee. Dr. Harik also believes that his subsequent employment by Swales Aerospace has been undermined by Dr. Gates, in that Dr. Gates has allegedly denied him access or facilitated the lack of access to resources needed to perform his job.  Dr. Harik feels this pattern of harassment has significantly impacted his ability to perform his current job with Swales Aerospace.

In order to make a determination as to whether or not Dr. Harik is considered an employee of NASA for the purpose of Federal discrimination statutes, the following 15 factors were applied to the facts.  (EEOC NOTICE Number 915.002, dated 12/03/97, Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms.)


*1. Does NASA control when, where, and how the worker performs the job?*

No.  According to the Technical Monitor (TM), Dr. Damodar Ambur, the SAMS (NAS1-00135) Performance Based Contracting (PBC) Task Order, Statement of Work outlines the specific deliverables the contractor is to provide.  The TM's role is to provide periodic progress reviews, and to answer any questions that may arise.  Dr. Harik indicated that the TM

gave him bi-weekly assignments and that NASA provided specific training on ANSYS-Multiphysics code.

**2. Does the work require a high level of skill or expertise?**
Yes. According to the TM, the work required knowledge of emerging technologies and knowledge of analytical methods.

**3. Does NASA rather than the worker furnish the tools, materials and equipment?**

NASA furnishes computers and software.

**4. Is the work performed on the premises of NASA?**

The work is performed on the premises of NASA.

**5. Is there a continuing relationship between the worker and NASA?**

Yes, the individual currently works for Swales Aerospace, a NASA contractor.

**6. Does NASA have the right to assign additional projects to the worker?**

No. According to the TM, the contractor's assignments are written in the contract using standard contracting mechanisms such as, milestones to be met and metrics to measure progress. According to the employee, the task is written in general terms to allow NASA to assign additional tasks and yet maintain specificity.

**7. Does NASA set the hours of work and the duration of the job?**

No. According to the TM, the contractor establishes the employee's work hours. The employee indicated that NASA partially sets work hours.

**8. Is the worker paid by the hour, week, or month rather than for the agreed cost of performing a particular job?**

According to the employee, he is paid on a biweekly basis.

**9. Does the worker have a role in hiring and paying assistants?**

No. The contractor employer, Swales Aerospace, is responsible for all human resources activities.

**10. Is the work performed by the worker part of the regular business of NASA?**

Yes. According to the SAMS (NAS1-00135) Performance Based Contracting (PBC) Task Order, Statement of Work, page 4, the purpose of the work is to "conduct research and technology development that evaluates concepts, quantifies behavior, durability, and damage tolerance, and validates performance of morphing technologies applicable to advanced materials and structures for aerospace applications." This work is in keeping with the Langley mission to "develop stronger, lighter more durable materials that can withstand the harsh conditions of space." (NASA Langley Research Center homepage, "Structures and Materials.")

**11. Is the worker engaged in his or her own distinct occupation or business?**

No. Dr. Harik is an employee of the contractor employer, Swales Aerospace.

**12. Does NASA provide the worker with benefits such as insurance, leave or workers' compensation?**

No. Swales Aerospace provides Dr. Harik with benefits.

**13. Is the worker considered an employee of NASA for tax purposes (i.e., NASA withholds Federal, state, and Social Security taxes)?**

No. Swales Aerospace, withholds Federal, state, and local taxes from the worker.

**14. Can NASA discharge the worker?**

According to the TM, the contractor decides the employment status of the employee at the conclusion of the task; they may be terminated or be re-deployed to other projects. According to Dr. Harik, NASA influences who is hired and fired.

**15. Do the worker and NASA believe that they are creating an employer-employee relationship?**

Dr. Harik feels as if he works for NASA vice Swales Aerospace. He believes he was hired by NASA to perform work specified by NASA. Dr. Harik also believes he was "redirected" from one contractor to another by NASA. He believes NASA controls his raises and that NASA could fire him. According to Dr. Harik, NASA controls what he does.

Based on the findings above, this office, in collaboration with the Office of Chief Counsel, does not believe that Dr. Harik's case is deemed appropriate for EO processing as a contingent worker. The information presented herein was gathered from the employee and Dr. Damodar Ambur, Technical Monitor.

If there are any questions, or you desire further information, please contact Ms. Janet Sellars at 757-864-9321.

Vivian B. Merritt
757-864-3290

cc:
Dr. Vasyl M. Harik